CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
MAY 23 2017
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| IRENE S. BRYANT, et al., | ) |
| Plaintiffs, | ) Civil Action No. 7:16CV00504 |
| v. | ) **MEMORANDUM OPINION** |
| STATE FARM FIRE AND CASUALTY COMPANY, | ) By: Hon. Glen E. Conrad<br>) Chief United States District Judge |
| Defendant. | ) |

In this insurance coverage dispute, Irene S. Bryant ("Bryant") seeks a declaratory judgment that a homeowner's insurance policy issued by State Farm Fire and Casualty Company ("State Farm") covers both Norman E. Barker and Norman P. Barker for any liability arising from a personal injury action that Bryant filed against the Barkers in Virginia state court. The case is presently before the court on cross-motions for summary judgment filed by Bryant and State Farm. For the reasons set forth below, Bryant's motion will be denied and State Farm's motion will be granted.

## Background

Norman E. Barker ("Norman Barker" or "Norman") lives with his wife at 750 Estates Road, Roanoke, Virginia. Dec. of Norman E. Barker, Docket No. 25-1. He has lived at that location for the last twenty years. Id. No one has resided with him and his wife for the past seven years. Id. Previously, Norman Barker and his wife lived at 3317 Ventnor Road, Roanoke, Virginia. However, since their move twenty years ago, they have not owned any personal property which is kept inside the house located at 3317 Ventnor Road. They do keep an RV at 3317 Ventnor Road, which is parked outside the fence that surrounds the house. Dep. of Norman E. Barker 11, Docket No. 11-2. The distance between the 3317 Ventnor Road house and the 750 Estates Road house is approximately 1.3 miles. Dec. of Norman E. Barker, Docket No. 25-1.

Norman P. Barker ("Preston Barker" or "Preston") is Norman Barker's son. Preston lives at 3317 Ventnor Road with his son, Norman's grandson. The property is still owned by Norman, but Norman does not collect rent from Preston. Preston has lived at 3317 Ventnor Road for his entire life. Dep. of Norman E. Barker 20, Docket No. 11-2. Preston Barker pays the utilities and performs any repairs to the 3317 Ventnor Road house. Dep. of Norman E. Barker 20-21. Norman rarely visits Preston at 3317 Ventnor Road. Dec. of Norman E. Barker, Docket No. 25-1. However, Norman goes to the 3317 Ventnor Road property approximately once a month to work on the RV. Dep. of Norman E. Barker 12, Docket No. 11-2. Preston's son also visits Norman at 750 Estates Road approximately once a month. Id. at 9.

Bryant alleges that, on the evening of September 9, 2014, she was walking in her neighborhood and approached the house at 3317 Ventnor Road, where Preston Barker's son was struggling to control a pit bull. See State Court Compl. ¶ 1-2, Docket 1-3. The pit bull ran to Bryant, jumped on her, and caused significant injuries. Id. On September 16, 2015, Bryant initiated a state-court tort suit against Norman and Preston Barker arising out of that incident.

The declarations of Norman and Preston Barker suggest that Norman has never acted as a custodian of the pit bull, Hercules, nor has he ever provided any care for Hercules.[1] Preston Barker further declared that Norman has never been in the house at 3317 Ventnor Road when Hercules was in the house. Dec. of Norman P. Barker, Docket No. 25-3. At the time of the accident, neither Norman nor Preston Barker considered Preston to be a resident of Norman's household. Id.; Dec. of Norman E. Barker, Docket No. 25-1.

At all times relevant, Norman Barker maintained a homeowner's insurance policy with State Farm (the "Policy"). The Policy defines "insured" as "you," meaning the named insured,

---

[1] There appears to be slight confusion as to the name of the dog. Preston refers to the dog as Hercules. See Dep. of Norman P. Barker 5, Docket No. 11-2. Norman refers to the dog as Sampson. See Dep. of Norman E. Barker 10, Docket No. 11-2.

"and, if residents of your household, your relatives and any other person under the age of 21 who is in the care of a person described above." "Insured" also means, "with respect to animals . . . the person or organization legally responsible for them. However, the animal . . . must be owned by you or a person included [in the definition of 'insured'.]" State Farm Homeowner's Policy 1, Docket No. 25-4. Norman Barker and his wife are the "named insureds" on the Policy. See id.

In addition to the tort suit, Bryant filed the instant declaratory action against Norman Barker, Preston Barker, and State Farm in state court. The declaratory action seeks a determination that Norman Barker is the legal owner of the pit bull by operation of Roanoke City Ordinance § 6-22,[2] that the Policy covers both Norman Barker and Preston Barker, and that, pursuant to the Policy, State Farm must indemnify Preston Barker for any judgment against him in the underlying state-court tort suit. State Farm removed to this court, and on December 21, 2016, the court granted the parties' joint motion to realign. See Docket No. 19. Accordingly, the court possesses jurisdiction to hear the matter pursuant to 28 U.S.C. § 1332. The parties have filed cross motions for summary judgment, and the court understands that the only issues in dispute are whether the Policy gives rise to a duty to indemnify Preston Barker and whether Norman Barker is an owner of the pit bull. These issues have been fully heard and are ripe for review.

### Standard of Review

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For a

---

[2] Roanoke City Ordinance § 6-22 defines an owner as "[e]very person having a right of property in a dog, or who keeps or harbors a dog, or who has a dog in his care, or who acts as a custodian of a dog, or who permits a dog to remain on or about any premises occupied by him."

3

party's evidence to raise a genuine issue of material fact, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When deciding whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party and draw all reasonable inferences in his favor. Id. at 255; see also Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985).

"In a declaratory judgment action, an insurance carrier may appropriately move for summary judgment to determine whether it is obligated to provide coverage to an insured, where . . . there are no material ambiguities in the policy." St. Paul Reinsurance Co. Ltd. v. Ollie's Seafood Grille and Bar, LLC, 242 F.R.D. 348, 352 (D.S.C. 2007) (citing Highlands Ins. Co. v. Gerber Prods. Co., 702 F. Supp. 109, 110 (D. Md. 1988)). In fact, "[s]ummary judgment is particularly well-suited for the resolution of insurance coverage disputes because the construction of insurance contracts is a legal question." Nationwide Mut. Ins. Co. v. Overlook, LLC, 785 F. Supp. 2d 502, 512 (E.D. Va. 2011); see also Transcontinental Ins. Co. v. RBMW, Inc., 551 S.E.2d 313, 317 (Va. 2001) ("[I]nterpretation of the provisions of an insurance contract presents a question of law . . . .").

## Discussion

### I. Applicable Law

A federal court sitting in diversity must apply the choice-of-law rules of the state in which that court is located. Klaxon Co. v. Stentor Elec. Mfg. Co., Inc., 313 U.S. 487, 496-97 (1941); Va. Code § 38.2-313 ("All insurance contracts on or with respect to the ownership, maintenance, or use of property in this Commonwealth shall be deemed to have been made in and shall be construed in accordance with the laws of this Commonwealth."); see also Buchanan v. Doe, 431 S.E.2d 289, 291 (Va. 1993) (the law of the state in which an insurance contract is

4

written and delivered governs its interpretation). In Virginia, "courts interpret insurance policies, like other contracts, in accordance with the intention of the parties gleaned from the words they used in the document." Transcontinental, 551 S.E.2d at 318; see Blue Cross & Blue Shield v. Keller, 450 S.E.2d 136, 140 (Va. 1994) ("[A] court must adhere to the terms of a contract of insurance as written, if they are plain and clear and not in violation of law or inconsistent with public policy."). "Each component of an insurance contract 'should be considered and construed together and seemingly conflicting provisions harmonized when that can be reasonably done, so as to effectuate the intention of the parties as expressed therein.'" Transcontinental, 551 S.E.2d at 318 (quoting Suggs v. The Life Ins. Co. of Virginia, 147 S.E.2d 707, 710 (Va. 1966)). Policy exclusions are likewise construed according to their plain language. See TravCo Ins. Co. v. Ward, 736 S.E.2d 321, 329 (Va. 2012).

Because insurers generally draft policy language themselves without any input from the insured, any ambiguities in that language are generally resolved in favor of the insured:

> [Courts find] in favor of that interpretation which grants coverage, rather than that which withholds it. Where two constructions are equally possible, that most favorable to the insured will be adopted. Language in a policy purporting to exclude certain events from coverage will be construed mostly strongly against the insurer.

Id. (quoting PBM Nutritionals, LLC v. Lexington Ins. Co., 724 S.E.2d 707, 713 (Va. 2012)). "A policy provision is ambiguous when, in context, it is capable of more than one reasonable meaning." Res. Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 636 (4th Cir. 2005). Nonetheless, "courts must not strain to find ambiguities." Id. "Contractual provisions are not ambiguous merely because the parties disagree about their meaning." Nextel WIP Lease Corp. v. Saunders, 666 S.E.2d 317, 321 (Va. 2008). With this legal framework in mind, the court will now consider the issues in the instant case.

## II. Whether Preston Barker Is an Insured

"The burden is upon the policy holder to bring himself within the terms of the policy." Maryland Casualty Co. v. Cole, 158 S.E. 873, 877 (Va. 1931). The Policy defines an "insured" as the named insured "and, <u>if residents of your household</u>, your relatives." State Farm Policy 1, Docket No. 25-4 (emphasis added). "[T]he term 'household' embraces a collection of persons living together as a single group with one head under one roof, a unit of permanent and domestic character." Furrow v. State Farm Mut. Auto. Ins. Co., 375 S.E.2d 738, 740 (Va. 1989). A household is a "collective body of persons living together within one curtilage, subsisting in common and directing their attention to a common object, the promotion of their mutual interests and social happiness." USAA Cas. Ins. Co. v. Hensley, 465 S.E.2d 791, 794 (Va. 1996). "A person's intent is important in determining whether [he] qualifies as a resident of a particular household." Furrow, 375 S.E.2d at 740. Courts in the Western District of Virginia have considered eight, non-exclusive factors to determine whether an adult child is a resident of a household. See State Farm Mut. Auto Ins. Co. v. Bowles, No. 6:09-CV-44, 2011 U.S. Dist. LEXIS 89953, at *2 (W.D. Va. Aug. 12, 2011). Those factors are:

> the extent to which the claimant (1) intends to be a permanent resident of the household; (2) has regular, versus erratic contacts with the household; (3) actually stays at the residence; (4) maintains a close, or strained relationship with other members of the household; (5) pays rent, board, or otherwise contributes to household expenses or maintenance; (6) keeps personal property at the residence; (7) receives substantial mail at the residence; and (8) maintains a room or other private space in the residence.

Id. (summarizing cases).

Applying these factors, the court concludes that Norman Barker and Preston Barker are not residents of the same household. State Farm has presented evidence that the Barkers did not consider Preston to be a resident of Norman Barker's household at the time of the incident. Id.;

6

Dec. of Norman P. Barker, Docket No. 25-3. While Bryant has put forth evidence that Preston's son visited Norman approximately once a month, and that Norman visited the 3317 Ventnor Road property to work on the RV at similar intervals, the appropriate inquiry relates to whether Preston was a resident of Norman's household—not whether Preston's son was a resident of Norman's household or whether Norman was a resident of Preston's household. See State Farm Homeowner's Policy 1, Docket No. 25-4 (defining "insured" as the "you [, the named insured,] and, if resident of your household, your relatives.") (emphasis added). Bryant asserts facts that relate to whether Norman Barker was a resident of Preston Barker's household, including the fact that Norman visited the RV once a month. Similarly, Bryant's evidence that Preston's son visited his grandfather at 750 Estates Road on a monthly basis is relevant to whether Preston's son was a resident of Norman's household. That Norman visited the Ventnor Road property, and that Preston's son visited Norman's house at approximately the same intervals, does not support the proposition that Preston was a resident of Norman's household, as required by the definitional language of the Policy.

Furthermore, Preston is responsible for maintenance at the Ventnor Road property—not maintenance at Norman's house. Dep. of Norman E. Barker 13, 20-21, Docket No. 11-2. There is no indication that Preston assists with repairs at the 750 Estates Road house, keeps personal property at the 750 Estates Road, receives substantial mail at that residence, or maintains a room or other private space there. Norman and Preston Barker do not live "under one roof" or "within one curtilage" as Norman Barker lives 1.3 miles away from Preston Barker. See Dec. of Norman Barker, Docket No. 25-1; Furrow, 375 S.E.2d at 740; Hensley, 465 S.E.2d at 794. Simply put, Bryant has not met her burden in demonstrating that Preston Barker is a resident of Norman Barker's household. See Cole, 158 S.E. at 877 ("The burden is upon the policy holder to bring himself within the terms of the policy.").

7

Bryant, however, argues that the term "resident of your household" is ambiguous, and must be construed in favor of the insured. "[A] court must adhere to the terms of a contract of insurance as written, if they are plain and clear and not in violation of law or inconsistent with public policy." Keller, 450 S.E.2d at 140. Nonetheless, "courts must not strain to find ambiguities." Res. Bankshares Corp., 407 F.3d at 636. Here, as Bryant demonstrated at the May 17, 2017 summary judgment hearing, the Supreme Court of Virginia and Courts in the Western District of Virginia have addressed the meaning of "resident of your household" numerous times. See, e.g., State Farm Mut. Auto. Ins. Co. v. Smith, 142 S.E.2d 562 (Va. 1965), Allstate Ins. Co. v. Patterson, 344 S.E.2d 890 (Va. 1986); Bowles, 2011 U.S. Dist. LEXIS 89953 (W.D. Va. Aug. 12, 2011); Travelers Pers. Sec. Ins. Co. v. Johnston, 6:16-CV-00011, 2017 U.S. Dist. LEXIS 55071 (W.D. Va. Apr. 11, 2017). Whatever ambiguity the term may have once possessed, such ambiguity has been resolved by various state and federal court decisions. Following the guidelines set forth in previous opinions, the court concludes that Bryant has not demonstrated that Preston Barker fits within the plain meaning of "resident of your household."

Finally, the court believes that this case is similar to Hatcher v. Nationwide Mut. Ins. Co., 70 Va. Cir. 430 (Va. Cir. Ct. 2000), in many important aspects. In Hatcher, a mother owned two properties. Her daughter lived with a dog at one of the properties. The mother lived at the other property. The daughter would stay over at her mother's residence between twelve and thirty times a year, but did not stay for extended periods of time. Id. at 431. Additionally, the daughter did not have her own bedroom at her mother's house, but used a shared guest bedroom. Id. Looking to the definition of "resident of the same household," as defined by the Supreme Court of Virginia, the Court determined that the daughter and mother were not members of the same household. Noting that "[c]ontinous residence is not required," the Court stated that there needed

to be a reasonable degree of regularity. Id. at 432. "Casual, erratic contacts are not sufficient." Id. Because the daughter did not have sufficient contacts with the mother's household, the mother and daughter were not members of the same household, and the issuer of the mother's homeowner's insurance policy was not required to indemnify the daughter in an underlying personal injury suit arising from a dog bite incident. Id. The instant case is factually similar to Hatcher. Accordingly, the court will deny Bryant's motion for summary judgment and grant State Farm's motion for summary judgment as to the issue of coverage for Preston Barker.

### III. Ownership of the Pit Bull

Bryant's complaint seeks a declaration that Norman Barker is the owner of Hercules by operation of Roanoke City Ordinance § 6-22. However, in her brief in support of summary judgment, Bryant avers that the parties have agreed to have this issue resolved in the underlying state-court action and asks the court to dismiss this issue from the instant action. State Farm argues that it did not agree to such dismissal. To the extent that Bryant seeks to voluntarily dismiss her demand for a declaration that Norman Barker owns Hercules, the court will grant that request.

"The purpose of Rule 41(a)(2) is freely to allow voluntary dismissals unless the parties will be unfairly prejudiced." Davis v. USX Corp., 819 F.2d 1270, 1273 (4th Cir. 1987). "Ordinarily, the mere fact that a plaintiff prefers the state courts ought not to prevent his discontinuing his suit; one court is as good as another." Id. (citing Young v. Southern Pacific Co., 25 F.2d 630, 632 (2d Cir. 1928) (Learned Hand, J., concurring)). In cases where state law is implicated, "courts should readily approve of dismissal when a plaintiff wishes to pursue a claim in state court." Id. at 1275. Here, Bryant seeks to have the state court determine whether Norman Barker may be considered the legal owner of Hercules. In light of the fact that a state court

9

proceeding has already been initiated, and defendant will not likely need to exert a significantly greater amount of resources in state court than in federal court on this issue, the court will grant Bryant's request to voluntarily dismiss her demand for a declaration that Norman Barker is the owner of Hercules.

Additionally, it is not clear whether ownership of the dog is a question properly before the court. "Declaratory relief is appropriate when an adjudication will assist the parties going forward." See FDIC v. Bd. of Sup'rs of Arlington Cty., No. 1:11CV1394, 2012 U.S. Dist. LEXIS 102132, at *15 (E.D. Va. July 23, 2012) (citing Baezer Homes Corp. v. VMIF/Anden Southbridge Venture, L.P., 235 F. Supp. 2d 485, 494 (E.D. Va. 2002)). "A case appropriate for declaratory judgment is where 'a plaintiff has an objective and reasonable apprehension of *future* litigation, which is of sufficient immediacy and reality, that a declaration of legal rights 'will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceeding.'" Id. at *16 (citing Energy Recovery, Inc. v. Hauge, 133 F. Supp. 2d 814, 817 (E.D. Va. 2000)) (emphasis in original). "[A]n adjudication of past conduct does not satisfy the requirements of a declaratory judgment action." Id. Here, Bryant seeks an adjudication of Norman's past actions towards Hercules. Moreover, it does not appear that a declaratory judgment as to ownership of the dog is necessary in this case to address the issue of whether Preston is covered by Norman's homeowner's insurance policy. That issue goes to the substance of the underlying tort claim and will be resolved by the state-court litigation. Therefore, because a declaratory judgment as to whether Norman Barker is an owner of the dog will not serve a useful purpose nor terminate and afford relief from the state-court controversy giving rise to the instant proceeding, the court will dismiss the request for declaratory relief as to ownership of the dog.

## Conclusion

For the reasons stated, Bryant's motion for summary judgment will be denied and State Farm's motion for summary judgment will be granted. Bryant's motion to voluntarily dismiss the declaration regarding the ownership of the pit bull will be granted. The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record. The Clerk is further directed to close this matter and strike it from the active docket of the court.

DATED: This 23rd day of May, 2017.

/s/ J. Conrad
Chief United States District Judge